**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

DAVID H. EAST,                                    )
                                                  )
              Plaintiff,                          )
                                                  )
       vs.                                        )    CAUSE NO. 3:16-CV-467-PPS-MGG
                                                  )
NANCY BERRYHILL,[1] Acting Commissioner           )
of the Social Security Administration,            )
                                                  )
              Defendant.                          )

## OPINION AND ORDER

David H. East appeals the Social Security Administration's decision to deny his

application for disability insurance benefits. An administrative law judge found that

East was not disabled within the meaning of the Social Security Act.  East raises a

number of challenges to this determination including that the ALJ failed to provide a

sufficient evidentiary basis for his residual functional capacity assessment.  Because I

agree that the ALJ failed to adequately support his RFC determination, I will reverse

and remand on this issue.

## BACKGROUND

At the time of his hearing before the ALJ on December 3, 2014, David East was

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is
substituted for her predecessor, Carolyn W. Colvin, as defendant in this suit.

5'10" tall and weighed about 200 pounds. [DE 10 at 54.]² He was educated up through

the 11th grade and completed a tree trimming program and car schooling at Ivy Tech.

[*Id.* at 55.]  East worked as a licensed tree topper and landscaper and, later, as a tow

truck driver and mechanic.  [*Id.* at 55-56.]  As a mechanic, East lifted up to 100 pounds

daily and frequently interacted with customers.  [*Id.* at 57-59.]  He claims that he is now

disabled by chronic back pain, neuropathy in his left leg that is aggravated by any kind

of simple movement, and severe diabetes.  [*Id.* at 67, 72.]  East attempted to return to

work part-time in 2012, but could not perform and has been unemployed since.  [*Id.* at

60.]

East injured his back in February 2011 while lifting hydraulic lines on the job.

[*Id.* at 60; DE 13 at 2.]  In August of that same year, he fell into a hole and injured his left

leg.  [DE 10 at 60, 355.]  East testified that cellulitis almost caused him to undergo an

amputation and left him with permanent nerve damage that feels "like a million

needles shoot[ing] up the leg."  [*Id.*]  In an attempt to alleviate his pain, East underwent

a back surgery in June 2012, but the pain only worsened.  [*Id.* at 340.]  He has been

unable to undergo a second surgery to fix the pinched nerve.  [*Id.* at 355.]

East testified that his pain is constant and severe at all times of the day.  [*Id.* at

76.]  He said he is unable to prepare meals, complete household chores, or even dress

---

²The administrative record is found in the court record at docket entry 10, and
consists of 830 pages.  I will cite to its pages according to the Court's Electronic Case
Filing page number, rather than by the Social Security Administration's Bates stamp
numbers, which don't begin until page 5 of 830 as the pages are enumerated in ECF.

himself in the mornings.  [*Id.* at 67, 69, 70-71.]  East described his typical day as

consisting of watching TV while nodding in and out of sleep, walking around the house

a little bit to exercise his legs, helping his daughter with homework, and lying awake in

bed until early morning unable to fall asleep because of the pain.  [*Id.* at 69.]  He said

that the pain is so severe that he sometimes fails to reach the toilet in time during the

middle of the night.  [*Id.* at 76.]  East says that he can only walk 50 to 75 feet before his

hip and lower back begin hurting.  [*Id.* at 68.]  He claims that sometimes the pain in his

left leg is so severe that he has to go to the hospital to get a pain shot.  [*Id.* at 65.]  East

also claims that he has problems with tingling in his hands due to diabetes and low

functioning in his right arm due to torn muscles.  [*Id.* at 68-69.]  East says that he only

experiences two good days each week, which usually still means a pain rating of 5 out

of 10.  [*Id.* at 76-77.]  East also testified that he had an upcoming surgery in February

2017 to attempt to relieve some of his lower back pain.  [*Id.* at 82.].

East has seen many doctors since his injury and, at one point, had both a

worker's compensation and malpractice attorney working on his case.  [*Id.* at 305.]  A

March 2012 MRI showed normal lumbar alignment, but indicated disc degeneration

with loss of disc height and signal intensity.  [*Id.* at 295.]  In May 2013, Dr. John Kelly,

East's treating physician, found spine tenderness on palpation, abnormal hip motion, an

antalgic gait, and abnormal skin pigmentation and temperature.  [*Id.* at 362.]  Another

one of East's treating physicians, Dr. Chetan Puranik, noted that East "ambulates with

difficulty and exhibits guarding and antalgic behavior."  [*Id.* at 349.]  Dr. Puranik

further observed degeneration of intervertebral disc, spinal stenosis, and reflex

dystrophy of the lower limb. [*Id.*]  East also experienced depression and insomnia as a

result of his pain. [*Id.* at 486.]  MRIs taken in May and October 2014 show disc

protrusion and herniation. [*Id.* at 506, 591.]  In November 2014, Dr. Kelly again

observed spine tenderness, reduced range of motion, and an antalgic gait. [*Id.* at 613.]

By then, East's condition had worsened to the point of needing a bedside commode and

motorized scooter. [*Id.* at 623.]

However, the record also contains instances of normal functioning where East's

treating physicians reported abnormal symptoms.  A month after Dr. Kelly observed an

antalgic gait, East visited Dr. Ralph Inabnit who observed a normal gait, grip strength,

and range of motion. [*Id.* at 346.]  Furthermore, diagnostic tests revealed unremarkable

or only mild degenerative disc disease. [*Id.* at 510.]  At times, East demonstrated

normal strength in his lumbar spine and lower extremities and no tenderness in his

lumbosacral spine. [*Id.* at 432, 613.]

East filed applications for Disability Insurance Benefits and Supplemental

Security Income and alleged a disability onset date of February 8, 2013. [DE 13 at 2.]

East's applications were denied initially and upon reconsideration. [*Id.*]  After holding

a hearing, ALJ William Leland issued an unfavorable decision denying East benefits.

[*Id.*]  In reaching his conclusion, the ALJ followed the five-step disability evaluation

process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At Step One, East met the insured

requirements of the Social Security Act and did not engage in substantial gainful

activity since his alleged onset date of February 8, 2013.  [DE 10 at 29.]  Pursuant to Step

Two, the ALJ found East to be impaired by diabetes mellitus, peripheral neuropathy,

degenerative disc disease, and reflex sympathetic dystrophy.  [*Id.*]  However, the ALJ

found at Step Three that these impairments did not meet or medically equal the severity

of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [*Id.* at 30.]

At Step Four, the ALJ determined that East was unable to perform any past relevant

work.  [*Id.* at 34.]  But he retained the capability to perform sedentary work with

additional limitations.  At Step Five, the ALJ determined that considering East's age,

education, work experience, and residual functional capacity, there are jobs that exist in

significant numbers in the national economy that East can perform.  [*Id.*]

## DISCUSSION

My review of the Commissioner's decision is limited and I must be deferential to

the ALJ's findings.  An ALJ's findings of fact must be upheld if supported by substantial

evidence.  *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).

Substantial evidence consists of "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Skinner v. Astrue*, 478 F.3d 836, 841 (7th

Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The ALJ does not

have to review every piece of evidence, but must provide a "logical bridge" between the

evidence and conclusions.  *Terry v. Astrue*, 580 F.3d 471, 474 (7th Cir. 2009).  When an

ALJ denies disability benefits but fails to adequately support his conclusions, the

decision must be remanded. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). I must

only consider the evidence pointed out by the ALJ in his written decision. *Id.*

East asks me to reverse the decision of the Commissioner and remand the case

for further proceedings. East makes three arguments on appeal but I will focus on his

claim that the ALJ failed to provide a sufficient evidentiary basis for his RFC

assessment. [*Id.* at 15.] Social Security Ruling 96-8p proscribes an ALJ's duties in

assessing a residual functional capacity:

> The RFC assessment must include a narrative discussion
> describing how the evidence supports each conclusion, citing
> specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations). . . .
> The RFC assessment must include a discussion of why
> reported symptom-related functional limitations and
> restrictions can or cannot reasonably be accepted as consistent
> with the medical and other evidence.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). An omission of this discussion is

enough to warrant reversal of the ALJ's decision. *Briscoe ex rel. Taylor v. Barnhart*, 425

F.3d 345, 352 (7th Cir. 2005).

In his RFC analysis, the ALJ determined that East was capable of performing

sedentary work, but must elevate his feet to stool height when sitting. [DE 10 at 31.] He

also found East able to frequently feel with both hands and occasionally climb ramps or

stairs, balance, stoop, kneel, crouch, or crawl. [*Id.*] The problem with the ALJ's RFC

analysis is that it reads as a short laundry list of evidence followed by a conclusion,

without any explanation linking the two. In terms of the record evidence, the ALJ spent

about half a page citing instances in the record in which the same symptom was reported as both normal and abnormal. [*Id.* at 32-33.] He also provided a narrative summary of the record, but failed to offer any explanation as to how these symptoms supported his RFC determination. Under SSR 96-8p, the ALJ must explain why "limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184 *7 (July 2, 1996). I follow the ALJ's recitation of the record evidence, but I am left guessing as to the basis of his RFC finding. There is no logical connection between the two.

To be clear, the ALJ does not have to discuss in depth every piece of evidence, but he "must provide an 'accurate and logical bridge' between the evidence and the conclusion . . . so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). This reasoning must be provided by the ALJ. *Jelinek*, 662 F.3d at 812; *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("[W]hile there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.")

Furthermore, the ALJ's brief recitation of the inconsistent medical facts is not substantive evidence supporting the sedentary-exertion RFC. A clear example of this is the ALJ's finding that East required the option to elevate his feet to *stool height* with absolutely no explanation as to why. [DE 10 at 31.] He says nothing about how he

7

arrived at this finding and cites no evidence to support it.  Perhaps it is because East

testified that he often sat with his feet up in a recliner so he could "move the nerves for

the neuropathy because otherwise they tingle and hurt." [*Id.* at 78.]  But that is just me

guessing.  The ALJ made no reference to this testimony or any other piece of evidence

in his decision.  While I was able to find this statement by reviewing the record, it is the

ALJ's duty to connect the evidence and his own conclusions; it's not for the reviewing

court to do.  *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ also relied on the perceived inconsistencies regarding reports as to

East's symptoms to find East's statements on the intensity, persistence, and limiting

effects of his symptoms not entirely credible.  [DE 10 at 32.]  It is the ALJ's responsibility

to make credibility determinations, but he must "adequately explain his credibility

finding by discussing specific reasons supported by the record."  *Pepper v. Colvin*, 712

F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d at 477).  The ALJ failed to do

this.  The ALJ juxtaposed many medical observations to show inconsistency.  For

example, East sometimes exhibited weakness in his left leg but other times

demonstrated normal strength in the extremity.  [*Id.* at 32.]  The record notes East's

antalgic gait which is a way to walk to avoid pain.  But there are also treatment notes

that describe East's gait as normal.  [*Id.*]  The problem is that the ALJ does not identify

what assertions regarding East's symptoms he thinks are credible and which he did not.

Rather, he includes a laundry list of symptoms and simply concludes that East is able to

perform sedentary work without explanation as to which subjective symptoms he

found credible and mandated that RFC determination and which subjective symptoms

he found were not credible and did not mandate a more restrictive RFC.

In addition, the ALJ cannot disregard East's subjective testimony merely because

the symptoms he describes are more severe than what the objective evidence supports.

*See Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006).  When this is the case, it

becomes the ALJ's duty to seek additional information and develop the administrative

record.  *Hill v. Astrue*, 295 F. App'x 77, 81 (7th Cir. 2008).  For instance, East testified that

he was prescribed a cane to stand and walk.  [DE 10 at 51.] And he arrived at the

hearing with the assistance of the cane.  [*Id.*]  East also claimed that he could not stoop,

kneel, crouch, crawl, or bend because the movement caused his "left leg [to] want to

give out."  [*Id.* at 68-69.]  In fact, East went to the hospital after his legs "gave out" and

he fell in his driveway in 2014.  [*Id.* at 764.]  Yet, inexplicably, the ALJ concluded that

East could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl.

[*Id.* at 31.]  Despite citing instances where East exhibited normal leg strength and gait,

the ALJ did not provide substantial evidence that East is able to complete all of these

actions nor was there any on record.

The nature of disabilities is such that a symptom may be aggravated one day and

tolerable the next.  *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008).  The ALJ cannot

deny disabilities simply because the claimant experiences a few good pain days.  *Punzio*

*v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).  East claimed that he usually experienced two

good days each week, which still come with a significant pain level.  [DE 10 at 76-77.]

9

The ALJ should not use the presence of reduced pain days as grounds for denying disability benefits. *See Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012). The vocational expert testified that there are no jobs for which an employer would tolerate an employee missing two days a month. [DE 10 at 91.] Even considering East's good days, he still may be unable to hold full-time employment.

The ALJ also discounted the functional capacity evaluation of East's treating physician, Dr. John Kelly. Dr. Kelly opined that East could stand and walk for 15 to 20 minutes, sit up to 30 minutes at one time, sit for four hours in a workday, and occasionally handle and finger. [DE 10 at 628-31.] The ALJ found that Dr. Kelly's evaluation exaggerated East's limitations. [*Id.* at 33.] He gave Dr. Kelly's opinion "some evidentiary weight" in his decision, but only to the extent it was consistent with the ALJ's findings in his opinion. [*Id.*] The ALJ also discounted the opinion of Dr. Henry Deleeuw, another one of East's treating physicians, who opined that "it is going to be difficult for [East] to return to work." [*Id.* at 812.] The ALJ's only explanation for giving Dr. Deleeuw's opinion "some weight" was that the ALJ found it was unclear whether Dr. Deleeuw was indicating that East cannot return to his past work or cannot return to any work whatsoever. [*Id.*]

Generally, the opinions of treating physicians are afforded controlling weight if supported by medically acceptable diagnostic tests and are not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2); *see White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). It is the ALJ's prerogative, of course, to find treating physician opinions

10

inconsistent, but he must discharge his duty to "explain the weight given to the opinions in [his] decision[]." SSR 96-6p, 1996 WL 374180 (July 2, 1996) (prescribing ALJs' use of State agency medical consultant opinions). The ALJ did not explain what parts of Dr. Kelly and Dr. Deleeuw's opinions he used to make the RFC determination. Rather, he explained only that he gave their opinions some weight to the extent they were consistent with other objective medical findings. [DE 10 at 32.] But again, it is unclear what medical findings, specifically, the ALJ relied on the make the RFC determination.

After the ALJ found that East's claim regarding the limiting effects of his impairments are not entirely credible *and* the discounting all of the available medical opinions without explanation as to what portions of the opinions supported his RFC assessment, the ALJ was left with an evidentiary deficit with which to build a logical bridge. He could not and did not point to any evidence linking the record medical evidence and the RFC determination. It was at this point that the ALJ should have exercised his duty to expand the record with additional medical opinions regarding the RFC limitations mandated by East's medical history and symptoms. *See* 20 C.F.R. § 404.1527(c)(3); *see also Smith v. Apfel*, 231 F.3d 433, 437-38 (7th Cir. 2000) (finding that the ALJ's duty to develop the record included ordering updated medical records when the ALJ did not give the treating physician's opinion controlling weight). Further medical opinion evidence would have supplied substantial evidence with which to determine an RFC. Instead, the ALJ ultimately assessed an RFC that no medical opinion or

subjective evidence directly supported.  To reach his conclusion, the ALJ was forced to make his own independent medical judgments, which ALJs are not permitted to do.  *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003).

In sum, without anything to supplement the record, the ALJ had no evidence with which to create the logical bridge.  As a result, I'm left with a brief summary of the record evidence and an RFC determination and no idea how the ALJ got from point "A" to point "B", leaving me unable to find that the RFC is supported by substantial evidence.  The Commissioner's decision is therefore reversed and remanded.  Because a remand is already necessary, I will not address East's remaining arguments, but the ALJ should consider and address them as appropriate.

## CONCLUSION

For the reasons stated above, the ALJ's decision denying benefits is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this Opinion and Order.

**SO ORDERED**.

ENTERED: July 24, 2017.

     s/ Philip P. Simon        
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**